UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RANDY A. BAUSCHER,<br><br>            Plaintiff,<br><br>   v.<br><br>BROOKSTONE SECURITIES, INC., a Florida corporation, JESSE KRAPF, an individual, and DOES 1-10,<br><br>            Defendants. | Case No. 4:12-cv-00028-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to compel arbitration filed by defendant Brookstone Securities, Inc. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## BACKGROUND

In this case, plaintiff Randy A. Bauscher has sued Brookstone, a stock-brokerage firm, and Jesse Krapf, an individual broker employed by Brookstone. For ease of reference, the Court will refer to the defendants collectively as Brookstone.

**Memorandum Decision and Order - 1**

Bauscher alleges that Brookstone's misinformation and manipulation caused Bauscher to invest large sums on margin in a penny stock, resulting in a loss of more than $650,000. Bauscher initially filed suit in Idaho state court on December 6, 2011, alleging violations of Idaho state law and common law. Brookstone removed the case here on the basis of diversity. *See* 28 U.S.C. § 1332. The Court denied Bauscher's motion to remand on April 26, 2011.

Brookstone now moves to compel arbitration and stay proceedings. It relies on the terms of the contract created when Bauscher applied for an account with First Southwest Company, Brookstone's clearing broker.[1] The contract consists of two documents; an "Account Application" bearing Bauscher's signature, and a "Customer Agreement," which was not signed by the parties, but is referenced in the Account Application. *See Exhibit A (Dkt. No. 14-5).* On Bauscher's Account Application, the paragraph immediately above Bauscher's signature states:

> BY SIGNING BELOW, YOU AGREE TO ALL TERMS OF THE CUSTOMER AGREEMENT INCLUDED WITH THIS ACCOUNT APPLICATION. YOU ACKNOWLEDGE RECEIPT OF A COPY OF THIS ACCOUNT APPLICATION AND THE CUSTOMER AGREEMENT. YOU UNDERSTAND YOU CAN REVIEW A COPY OF THE ENTIRE CUSTOMER AGREEMENT AT ANY TIME

---

[1] A clearing broker is a brokerage firm which provides cashier and processing functions such as "order entry, confirmation, clearance of trades, calculation of margin, or similar activities." *VanCook v. S.E.C.*, 653 F.3d 130, 133 (2d Cir. 2011) (internal quotation marks and alteration omitted). The clearing broker acts at the behest of the introducing broker, in this case Brookstone. The introducing broker interacts directly with the investor-customers. *Id.*

**Memorandum Decision and Order - 2**

> BY ACCESSING WWW.FIRSTSWCLEARING.COM. YOU CERTIFY THAT YOU HAVE READ, UNDERSTAND AND AGREE WITH ALL PROVISIONS OF THE CUSTOMER AGREEMENT. THE CUSTOMER AGREEMENT BENEFITS FIRST SOUTHWEST COMPANY, INTRODUCING BROKERS FOR WHICH IT CLEARS TRANSACTIONS AND PERSONS RELATED TO EACH OF THE FOREGOING. WITHIN THE CUSTOMER AGREEMENT, PAGE 10, PARAGRAPH 27 CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE.[2]

*Id.* at 2 (block capitalization in original). The referenced Customer Agreement includes an arbitration agreement which states, in part,

> ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.

*Id.* at 10 (block capitalization in original).

## ANALYSIS

Under the Federal Arbitration Act, any "party aggrieved by the alleged failure . . .

---

[2] The pertinent section of Bauscher's Account Application is illegible in the copy of the document submitted to the Court. However, Bauscher submitted as evidence a blank, but legible, copy of the same account agreement, which was provided to them by Brookstone. *See Exhibit C (Dkt. No. 18-4)* at p. 17. Bauscher does not contend that the blank application differs from the one that he signed. *See Johnson v. Long John Silver's Restaurants, Inc.*, 320 F. Supp. 2d 656, 663 n.5 (M.D. Tenn. 2004) (holding that blank copy of agreement to arbitrate containing same terms as version signed by party constitutes sufficient evidence of existence of agreement). Brookstone also introduced an affidavit from Paul R. Richardson, the President and CEO of Brookstone, averring that the quoted language "appears directly above Plaintiff's signature on page 2" of his account application. *See Richardson Declaration (Dkt. No. 16-4)* at ¶ 6. Bauscher does not challenge the accuracy of the quotation in the affidavit or Brookstone's quotation of this language in their memorandum. The Court is satisfied that there is adequate evidence to conclude that this was the language contained in the Account Application signed by Bauscher.

**Memorandum Decision and Order - 3**

of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  The Court must stay proceedings and order arbitration if (1) there is a valid agreement to arbitrate between the parties, and (2) the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  In construing the arbitration agreement, the Court "must apply ordinary state-law principles that govern the formation of contracts." *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998) (internal quotation marks omitted).

Bauscher resided in Idaho when he purportedly signed the Account Application, and the Court therefore evaluates the contract under Idaho law.  *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).  Under Idaho law, the party seeking to enforce the terms of a written contract bears "[t]he burden of proving the existence of a contract" by a preponderance of the evidence.  *Idaho Power Co. v. Cogeneration, Inc.*, 9 P.3d 1204, 1213 (Id.Sup.Ct. 2000).  Once the existence of a contract is established, doubts about its scope "are to be 'resolved in favor of coverage.'" *Int'l Ass'n of Firefighters, Local No. 672 v. City of Boise*, 30 P.3d 940, 946 (Id.Sup.Ct. 2001) (quoting *AT & T Tech., Inc. v. Commc'n Workers of America*, 475 U.S. 643, 650 (1986)).

Bauscher argues that the documents submitted by Brookstone are inadequate to

**Memorandum Decision and Order - 4**

establish the existence of a valid arbitration agreement between the parties. He argues that (1) Brookstone failed to present admissible evidence of the agreement, (2) the Customer Agreement is a contract between Bauscher and First Southwest; therefore Brookstone may not compel his performance, (3) performance of the agreement is impossible because it requires arbitration under the rules of an organization that no longer exists, and (4) Brookstone has waived its right to enforce the agreement through its three-and-a-half-month delay in filing the instant motion.  The Court is not persuaded.  It will address each of Bauscher's arguments in turn.

**Admissibility of the Contract**

Bauscher argues that Brookstone has inadequately authenticated the contract containing the arbitration agreement.  Brookstone submitted the contract as an attachment to an affidavit from Paul R. Richardson, the President and CEO of Brookstone. Richardson's affidavit states that the Account Application bearing Bauscher's signature is authentic and contains the pertinent language referencing the Customer Agreement. Bauscher's argument is that Richardson's affidavit does not establish that he had personal knowledge of the facts that he avers are true. *See* Fed. R. of Evid. 602 ("A witness may testify to a matter only if evidence is introduced to support a finding that the witness has personal knowledge of the matter.").

The Court disagrees that the affidavit is "too conclusory to be cognizable." *United*

*States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999).  The asserted basis for Richardson's knowledge is his position as CEO of Brookstone. Richardson claims personal knowledge that the Account Application was provided to Bauscher by Krapf, working as a "registered representative" of Brookstone, as is "required by Brookstone in the course of opening such [new] accounts." *See Richardson Declaration* at ¶¶ 4, 5. Bauscher signed the Account Application on June 24, 2011, and Krapf signed it on June 28, 2011. *Id.* at ¶ 5.  While Bauscher hypothesizes that Richardson may not have actually spoken to Krapf or reviewed Bauscher's file, "speculation as to an affiant's alleged lack of personal knowledge of the events in his affidavit does not render it inadmissible." *Nev. Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1823 (2012).  The Court concludes that Richardson's declaration is sufficient to support a finding that the contract is what Brookstone claims it is.  *See* Fed. R. Evid. 901(a).

Bauscher also asserts that the arbitration agreement is inadmissible hearsay. However, a document "which . . . itself affects the legal rights of the parties" is not introduced for the truth of the matter asserted because "the significance of [the] offered statement lies solely in the fact that it was made."  Fed. R. Evid. 801(c) advisory committee's note.  In other words, "[f]acts of independent legal significance constituting a contract which is at issue are not hearsay." *United States v. Rubier*, 651 F.2d 628, 630 (9th Cir. 1981) (per curiam).

Memorandum Decision and Order - 6

Having held that the contract is competent evidence, the Court also finds that Brookstone has carried its burden of showing the existence of a valid contract. Bauscher has not submitted any evidence contradicting Brookstone's claim that the Account Application was signed by Bauscher, and therefore the preponderance of the evidence supports the existence of a valid contract.

Bauscher does allege that "the purported Customer Agreement . . . appears to be two separate documents that were put together in an effort possibly to confuse the underlying issue." *See Bauscher's Response Brief (Dkt. No. 18)* at p. 8. Bauscher is correct that there are two separate documents comprising the contract: the Account Agreement and the Customer Agreement. However, under Idaho law, "[a] signed agreement may incorporate by reference to another agreement, which is not signed by the parties, if the terms to be incorporated are adequately identified and readily available for inspection by the parties." *Harris, Inc. v. Foxhollow Constr. & Trucking, Inc.*, 264 P.3d 400, 416 (Id.Sup.Ct. 2011).

The unsigned Customer Agreement meets this standard for incorporation by reference. The Account Application, which Bauscher signed, is explicit:

> By signing below, you agree to all terms of the Customer Agreement included with this account application. You acknowledge receipt of a copy of . . . the Customer Agreement. You understand you can review a copy of the entire Customer Agreement at any time [online]. You certify that you have read, understand and agree with all provisions of the Customer Agreement.

**Memorandum Decision and Order - 7**

*See Exhibit A (Dkt. No. 16)* at p. 2 (block capitalization removed). There is no contention that the Customer Agreement was not, in fact, "readily available for inspection" by Bauscher. *Harris, Inc.*, 264 P.3d at 416. The Court therefore finds that the Customer Agreement was validly incorporated by reference in the Account Application. Bauscher's argument does not constitute evidence refuting the existence of a valid contract.

**Brookstone's Right to Enforce the Arbitration Agreement**

Bauscher argues that the Account Application is a contract between himself and First Southwest Company, the clearing broker for Brookstone. Therefore, he contends that Brookstone cannot enforce the contract against him. Brookstone does not contest that argument, but argues that it was a third-party beneficiary, and the Court agrees.

Bauscher notes that the majority of courts have held that an introducing broker may not enforce an arbitration agreement between one of their customers and a clearing broker. *See Arrants v. Buck*, 130 F.3d 636, 640-41 (4th Cir. 1997) (collecting cases). An exception to that general rule exists, however, when a "specific provision in the customer-clearing broker agreement makes the arbitration clause applicable to the introducing broker." *Id.* at 641. Where the agreement expresses a "clear intent" to benefit the introducing broker, the introducing broker may enforce the arbitration clause. *Id.* (internal quotation marks omitted).

That is the case here. The contract expressly states in three separate places that the

 Memorandum Decision and Order - 8

introducing broker, Brookstone, was intended to be a beneficiary of the arbitration agreement between FSW and Bauscher.  The Account Application states, "The Customer Agreement benefits First Southwest, *introducing brokers for which it clears transactions* and persons related to each of the foregoing." *Exhibit A, supra,* at p. 2 (block capitalization removed and emphasis added).  This is confirmed by the Customer Agreement.  Immediately beneath the title, in an enlarged font it states, "For FirstSouthwest and/or Broker/Dealers for which it clears transactions." *Id.* at p. 4 (emphasis added).  Finally, the arbitration clause of the Customer Agreement states,

> Any and all controversies between you and FSC, *or the introducing broker*, agents, representatives, employees, directors, officers or control persons of FSC *or the introducing broker*, arising out of . . . FSC's business, *the introducing broker's business* or your accounts, shall be conducted pursuant to the code of arbitration procedure of the National Association of Securities Dealers, Inc.

*Id.* at 10-11 (emphasis added).  This language is unambiguous and sufficient to establish that the introducing broker may enforce the arbitration agreement as a beneficiary.  *See Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1047 (9th Cir. 1996) (recognizing that similar contractual language allowed introducing broker to enforce arbitration agreement as beneficiary of contract).

Bauscher counters that the contract does not identify Kraupf or Brookstone as the "introducing brokers" and therefore its terms are too indefinite to be enforceable.  However, under Idaho law,

**Memorandum Decision and Order - 9**

> The general rule is that a contract is enforceable if it is complete, definite and certain in all its material terms, or contains provisions which are capable in themselves of being reduced to certainty. Courts will not hold the contracting parties to a standard of absolute certainty relative to every detail of a contract. Rather only reasonable certainty is necessary before a contract will be given legal effect.

*General Auto Parts Co., Inc. v. Genuine Parts Co.*, 979 P.2d 1207, 1215 (Id.Sup.Ct. 1999) (internal quotation marks, alterations, and citations omitted).

The terms of the agreement here are sufficiently certain to render it enforceable. The first paragraph of the Customer Agreement defines the meaning of "introducing broker" as "your personal broker who utilizes the services and facilities of FSC to perform certain execution and clearing functions (referred to herein as 'Introducing Broker'). As used herein, 'Broker' refers to the personal broker with whom you deal and the brokerage firm . . . with whom he or she is associated . . . ." *Exhibit A, supra*, at p. 4. This definition of terms is and was sufficient to render the contract's references to the introducing broker "capable of being reduced to certainty." *General Auto Parts Co.*, 979 P.2d at 1215. There is no dispute that Bauscher's personal broker was Krapf, who worked for Brookstone. As Bauscher's complaint alleges, Bauscher's interactions were directly with Krapf. In fact, Krapf gave the Account Application to Bauscher, and after Bauscher mailed it in, Krapf signed it as the "registered representative" for the account. *Exhibit A, supra*, at p. 2.  Reading the contract as a whole, it is clear that the arbitration was intended to benefit Brookstone, acting in its capacity as Bauscher's introducing

**Memorandum Decision and Order - 10**

broker.

**Possibility of Performance**

Next, Bauscher argues that the arbitration agreement is invalid because it requires the arbitration to be conducted "pursuant to the code of arbitration procedure of the National Association of Securities Dealers, Inc." ("NASD"). As the NASD ceased to exist in July 2007, Bauscher contends that it is impossible to enforce the agreement.

The Court disagrees. Though the NASD no longer exists in name, it was "succeeded" by the Financial Industry Regulatory Authority ("FINRA"). *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 474 n.2 (4th Cir. 2012). FINRA came into existence when NASD and the New York Stock Exchange's member regulation body merged to become "the self-regulatory organization for the securities industry." *Id.*; *see also Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d 569, 571 (2d Cir. 2011) ("FINRA is the successor to the National Association of Securities Dealers . . . ."). FINRA adopted NASD's by-laws, including those concerning arbitration, with changes made "solely to reflect the proposed governance structure of the [new organization's] Board." SEC Release No. 34-56145, 2007 WL 5185330, at *8 (July 26, 2007). Given that FINRA is the successor entity to NASD and serves the same function, the fact that the arbitration agreement refers to NASD does not render the contract illusory or performance impossible. *See Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1166 (N.D. Cal. 2011) (holding that

court can compel arbitration "before FINRA where . . . the arbitration agreement specifies that arbitration will occur under the rules of NASD" and collecting similar cases).

**Waiver**

Finally, Bauscher argues that Brookstone has waived its right to enforce the arbitration clause because of the approximately three and a half month delay between removal of the case and the filing the motion to compel arbitration. Waiver of a contractual right to arbitration is disfavored, and "thus any party arguing waiver of arbitration bears a heavy burden of proof." *United States v. Park Place Assoc.*, 563 F.3d 907, 921 (9th Cir. 2009) (internal quotation marks omitted). The party seeking to prove waiver must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

Bauscher has not met the "heavy burden" of proving waiver in this instance because there is no evidence that Brookstone took actions inconsistent with its right to arbitrate or that Brookstone's delay in filing the motion prejudiced Bauscher. *Park Place Assoc.*, 563 F.3d at 921. Bauscher relies on *Viking Packaging Technologies., Inc. v. Prima Frutta Packing, Inc.*, 629 F. Supp. 2d 883 (E. D. Wis. 2009). There, the court ruled that the defendants had waived their right to arbitrate because they "did not mention

arbitration when they answered the complaint and thereby presumptively waived their right to arbitrate." *Id.* at 885. In contrast, Brookstone put Bauscher on notice by identifying the right to arbitrate as a defense in their answer to the complaint. *See Brookstone's Answer (Dkt. No. 5)* at ¶ 76.

Further, the *Viking Packaging* court applied the law of the Seventh Circuit, which does not require a court to find, as an element of waiver, that the opposing party suffered prejudice. *Viking Packaging Techs., Inc.*, 629 F. Supp. 2d at 884 (citing *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995)). In this Circuit, however, the opposing party must demonstrate prejudice. *Fisher*, 791 F.2d at 694. Bauscher has suggested no reason why Brookstone's delay was prejudicial. During the three-and-a-half month time period, the parties litigated a motion to remand to state court and engaged in discovery. This is inadequate to establish prejudice. *See id.* at 697 (burden of participating in discovery inadequate to show prejudice).

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Motion to Compel Arbitration and Stay Proceedings (docket no. 16) is GRANTED.



DATED:  **July 30, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 14**